IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-00099-FDW-DCK

| | |
|---|---|
| **B-21 WINES, INC.**<br>**MIKE RASH**<br>**JUSTIN HAMMER**<br>**LILA RASH**<br>**BOB KUNKLE,**<br><br>    **Plaintiffs,**<br><br>  v.<br><br>**JOSHUA STEIN**<br>**A.D. GUY JR.,**<br><br>    **Defendants.** | **ORDER** |

THIS MATTER is before the Court on the Parties' cross-motions for Summary Judgment, and Defendant's Motion to Strike. (Doc. Nos. 27, 28, 35). On June 17, 2021, the Court held oral arguments on all three pending motions. After carefully considering the arguments presented in the Parties' briefing and at oral argument and for the reasons stated herein, the Court DENIES Defendant's Motion to Strike, (Doc. No. 35), DENIES Plaintiff's Motion for Summary Judgment, (Doc. No. 27), and GRANTS Defendant's Motion for Summary Judgment. (Doc. No. 28).

### I.  BACKGROUND

Plaintiffs are a group of North Carolina citizens who wish to buy specialty wine from out-of-state retailers, and B-21 Wines, a Florida-based wine retailer who wishes to ship wine directly to consumers located in North Carolina. (Doc. No. 1). The individual Plaintiffs are unable to buy specialty wine from out-of-state retailers because North Carolina prohibits the direct shipment of wine from out-of-state retailers sent to North Carolina consumers. Id. B-21 Wines is likewise

1

prohibited from shipping wine directly to consumers in North Carolina and as a consequence, has lost out on revenues that would have been generated by selling to the North Carolina market. Id.

Plaintiffs initially filed this lawsuit on February 18, 2020, against Defendant A.D. Guy, in his official capacity as the Chair of the North Carolina Alcoholic Beverage Control Commission ("ABC"), and Joshua Stein, in his official capacity as Attorney General of North Carolina. Id. However, on August 19, 2020, this Court entered an Order dismissing Joshua Stein as a Defendant because Mr. Stein was, and remains, insulated from suit under the Eleventh Amendment. (Doc. No. 21, p. 9). After roughly eight months of discovery, the parties filed the pending cross-motions for summary judgment. (Doc. Nos. 27, 28). Defendant also filed a Motion to Strike two of Plaintiffs' expert reports. (Doc. No. 35). The Court has carefully considered the arguments and evidence set forth in the motions and at oral argument and is now ready to rule on the pending Motion to Strike and the pending Motions for Summary Judgment.

## II. DISCUSSION

### a. Motions for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). In this Matter, both Plaintiff and Defendant agree on the material facts, compare (Doc. No. 27-1) with (Doc. No. 29); thus, the Court is tasked only with determining whether Plaintiff or Defendant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a).

Plaintiffs and Defendant have filed cross-motions for summary judgment on the same issue: whether North Carolina's statutory scheme that prohibits out-of-state wine retailers from shipping directly to consumers in North Carolina violates the dormant Commerce Clause. See (Doc. Nos. 27, 28). Plaintiffs argue the prohibition on direct shipping by out-of-state wine retailers violates the Commerce Clause and is not saved by the Twenty-First Amendment. (Doc. No. 27-

1). Defendant argues the prohibition on direct shipping by out of state-wine retailers is protected by the Twenty First-Amendment. (Doc. No. 29).

Thus, the Court must determine whether North Carolina's prohibition on direct shipping by out-of-state wine retailers violates the dormant Commerce Clause and if so, whether the Twenty-First Amendment breathes life back into the North Carolina regulations at issue.

### i. Alcohol Regulation in North Carolina

In their Motion for Summary Judgment, Plaintiffs ask this Court to invalidate the following North Carolina statutes: N.C. GEN. STAT. § 18B-102.1, N.C. GEN. STAT. § 18B-109, and N.C. GEN. STAT. § 18B-900(a)(2). (Doc. No. 27). The statutes work together to create a regulatory environment in which out-of-state wine retailers may not ship wine directly to consumers residing in North Carolina and may not obtain a North Carolina ABC permit to sell alcohol unless certain conditions are met. However, before setting forth the specific statutes Plaintiffs seek to invalidate, the Court finds it would be useful to explain the historical developments that led to North Carolina's current alcohol regulatory scheme.

Prior to Prohibition and the passage of the Eighteenth Amendment, alcohol was primarily bought and sold under a "tied-house" saloon system whereby alcohol producers entered into monopolistic arrangements with saloonkeepers. (Doc. No. 29-2, pp. 6-7); see also Lebamoff Enters., Inc. v. Whitmer, 956 F.3d 863, 867, cert. denied, 141 S. Ct. 1049 (6th Cir. 2020). These monopolistic arrangements required saloonkeepers to sell only the alcohol provided by the controlling manufacturer. The manufacturers were generally profit-motivated "absentee owners" who "knew nothing and cared nothing about the community." Raymond B. Fosdick & Albert L. Scott, *Toward Liquor Control* 33 (Ctr. for Alcohol Pol'y 2011) (1933); accord Lebamoff, 956 F.3d at 867. What resulted was a significant "amount of crime and misery" within American society. See Crowley v. Christensen, 137 U.S. 86, 91 (1890); accord Lebamoff, 956 F.3d at 867.

In response to the problems caused by the tied-house saloon system, federal and State governments passed laws granting individual States the right to regulate the sale and consumption of alcohol. See Tenn. Wine and Spirits Retailers Ass'n v. Thomas, 139 S. Ct. 2449, 2464-65 (2019) (discussing the Wilson Act and Webb-Kenyon Act, which were federal laws that aimed to give individual States regulatory power over alcohol). Eventually, the Eighteenth Amendment was ratified, which prohibited "the manufacture, sale, or transportation of intoxicating liquors" within the United States. U.S. Const. amend. XVIII, § 1. However, Prohibition proved to be unworkable and, less than fifteen years later, the Eighteenth Amendment was repealed by the Twenty-First Amendment. U.S. Const. amend. XXI, § 1. In addition to repealing the Eighteenth Amendment, the Twenty-First Amendment explicitly gave States the right to set laws governing the importation, sale, and possession of alcohol within its borders. Id., § 2.

In response to the passage of the Twenty-First Amendment, North Carolina convened a commission to study alcohol in North Carolina and to propose appropriate legislation to regulate and control the sale and possession and alcohol in North Carolina. VICTOR S. BRYANT, ET AL., REPORT OF COMMISSION TO STUDY THE CONTROL OF ALCOHOLIC BEVERAGES IN NORTH CAROLINA (1937). The Report detailed a number of findings related to the ills of alcohol consumption and ultimately recommended North Carolina adopt a "Governmental Monopoly" for the regulation of alcohol, known today as the Alcohol Control Beverage Commission. See BRYANT, ET AL., 18. In accordance with the Report's recommendations, North Carolina's General Assembly formally established the State's Alcohol Beverage Control Commission and a "three-tier system" for regulating alcohol. Act of Feb. 22, 1937, ch. 49, 1937 N.C. Sess. Laws 84.

In simplified terms, North Carolina's three-tier system requires alcohol producers, the first tier, to sell only to licensed in-state wholesalers, the second tier. In turn, the wholesalers are then permitted to sell to in-state retailers, the third tier. Once alcohol has made its way through all three

tiers, consumers are permitted to buy alcohol from in-state retailers. See (Doc. No. 29, pp. 5-6); Beskind v. Easley, 325 F.3d 506, 510 (4th Cir. 2003). This three-tier system, which exists in many other States, serves to promote temperance and the social welfare of the citizens of North Carolina by requiring nearly all alcohol to pass through North Carolina's regulated system.[1] See BRYANT, ET AL., 18; see also Lebamoff, 956 F.3d 875.

Turning now to the statutes at issue: N.C. GEN. STAT. § 18B-102.1, N.C. GEN. STAT. § 18B-109, and N.C. GEN. STAT. § 18B-900(a)(2) work in tandem to prohibit out-of-state wine retailers from shipping directly to consumers in North Carolina. Specifically, N.C. GEN. STAT. § 18B-102.1 makes it

> unlawful for any person who is an out-of-state retail or wholesale dealer in the business of selling alcoholic beverages to ship or cause to be shipped any alcoholic beverage directly to any North Carolina resident who does not hold a valid wholesaler's permit under Article 11 of this Chapter.[2]

N.C. GEN. STAT. § 18B-109 provides that "[e]xcept as authorized in G.S. 18B-1001.1, no person shall have any alcoholic beverage mailed or shipped to him from outside this State unless he has the appropriate ABC permit."[3] ABC permits are generally only issued to residents of North Carolina, unless the permit applicant falls within a defined exception. N.C. GEN. STAT. § 18B-900(a). The only defined exceptions to the residency requirement are: (1) the applicant is "an officer, director, or stockholder of a corporate applicant or permittee and is not a manager or otherwise responsible for the day-to-day operation of the business;" (2) the applicant "has executed a power of attorney designating a qualified resident of this State to serve as attorney in fact for

---

[1] Certain types of alcohol imported into North Carolina by producers are exempted from the three-tier system. See, e.g., N.C. GEN. STAT. § 18B-1001.1.
[2] Article 11 lists the entities or people to whom the Alcohol Beverage Control Commission can issue commercial alcohol permits. N.C. GEN. STAT. § 18B-1100.
[3] N.C. GEN. STAT. 18B-1001.1 allows "wineries holding a federal basic wine manufacturing permit" to obtain a "wine shipper permit," allowing those wineries holding such permits to ship wine directly to consumers in North Carolina.

purposes of receiving service of process and managing the business for which permits are sought;" or (3), the applicant is "applying for a nonresident malt beverage vendor permit, a nonresident wine vendor permit, or a vendor representative permit." § 18B-900(a)(2). Plaintiffs challenge the constitutionality of the relevant statutes under the dormant Commerce Clause.

### ii. The Dormant Commerce Clause

The Commerce Clause of the U.S. Constitution provides that "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. In addition to the affirmative grant of power given to Congress, the Commerce Clause contains an implied restriction on State power—it contains a "'self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce.'" Dennis v. Higgins, 498 U.S. 439, 447 (1991) (quoting S.-Cent. Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984)). The implied restriction on State power has come to be known as the "dormant Commerce Clause," which is "driven by concern about 'economic protectionism, that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 337-38 (2008) (quoting New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-74 (1988)).

State laws challenged under the dormant Commerce Clause are analyzed under a two-step inquiry. First, a court "inquires whether the state law *discriminates* against interstate commerce." Brown v. Hovatter, 561 F.3d 357, 363 (4th Cir. 2009) (emphasis in original). If the answer to the first question is yes, then the "discriminatory law is virtually *per se* invalid," unless the "discrimination is demonstrably justified by a factor unrelated to economic protectionism." Id. (citations omitted). Only when there is no discrimination, does a court ask the second question and evaluate "whether the state law[] 'unjustifiably . . . burden[s] the interstate flow of articles of

commerce.'" Id. (citing Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or., 511 U.S. 93, 98 (1994).

### iii. The Twenty-First Amendment

A dormant Commerce Clause analysis changes somewhat when the article of commerce being regulated is alcohol. The Twenty-First Amendment explicitly gives States the right to regulate the "transportation or importation into any State . . . for deliver or use therein of intoxicating liquors." U.S. Const. amend. XXI, § 2. Thus, a tension exists between the dormant Commerce Clause and the Twenty-First Amendment:

> [W]ithin the authority to regulate alcoholic beverages conferred on the States by the Twenty-first Amendment, some power to regulate commerce was withdrawn from Congress so that the Commerce Clause could not be construed to prevent the enforcement of State laws regulating the importation of alcoholic beverages and the manufacture and consumption of alcoholic beverages within State borders.

Beskind, 325 F. 3d at 513 (citing Ziffrin, Inc. v. Reeves, 308 U.S. 132, 138 (1939)). In order to resolve the tension between the dormant Commerce Clause and Twenty-First Amendment, courts are directed to first consider "whether the purported State regulation violates the Commerce Clause *without* consideration of the Twenty-first Amendment." Beskind, 325 F.3d at 513 (emphasis added); see also Tenn. Wine, 139 S. Ct. at 2474 (explaining that a law "could not be sustained" [under the dormant Commerce Clause] if the law "discriminates on its face against nonresidents"). Then, if the challenged regulation or law is found to violate the dormant Commerce Clause, courts "ask whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." Tenn. Wine, 139 S. Ct. at 2474. Such public health and safety measures include the promotion of "responsible consumption, preventing underage drinking, and collecting taxes." Sarasota Wine Mkt., LLC v. Schmitt, 987 F.3d 1171, 1180 (8th Cir. 2021).

Most relevant to this case, however, are other legitimate nonprotectionist grounds that could save North Carolina's challenged regulations. Maintaining a three-tier system for alcohol regulation, like North Carolina's, *can* be a legitimate nonprotectionist ground inherently tied to public health and safety measures the Twenty-First Amendment was passed to promote. Indeed, the Supreme Court has explicitly stated the three-tier system for alcohol regulation is "unquestionably legitimate." Granholm v. Heald, 544 U.S. 460, 489 (2005) (citing North Dakota v. United States, 495 U.S. 423, 432 (1986)); Tenn. Wine, 139 S. Ct. at 2471 (invalidating a two-year durational residency requirement in part because it was "not an essential feature of a three-tiered scheme"). And, both before and after Tenn. Wine, numerous Courts of Appeals—including the Fourth Circuit—have found that laws essential to the existence of a three-tier system withstand scrutiny under the dormant Commerce Clause thanks to § 2 of the Twenty-First Amendment. See, e.g., Brooks v. Vassar, 462 F.3d 341, 352 (4th Cir. 2006) ("[A]rguments challenging the three-tier system itself . . . [are] foreclosed by the Twenty-First Amendment and . . . Granholm."); Cooper v. Tex. Alcoholic Beverage Comm'n, 820 F.3d 730, 743 (5th Cir. 2016) ("Distinctions between in-state and out-of-state retailers and wholesalers are permissible only if they are an inherent aspect of the three-tier system.") (citation omitted), cert. denied sub nom., Tex. Package Stores Ass'n v. Fine Wine & Spirits of N. Tex., 137 S. Ct. 494, 196 (2016); Lebamoff, 956 F.3d at 872 (upholding Michigan's ban on direct shipping by out-of-state wine retailers because striking down the ban would "necessarily" undermine Michigan's three-tier system); Sarasota Wine Mkt., LLC, 987 F.3d at 1183 (upholding Missouri liquor laws in part because the plaintiff "without question attack[ed] core provisions of Missouri's three-tiered system").

Thus, the question before the Court is relatively straightforward: if North Carolina's ban on direct shipping by out-of-state wine retailers is discriminatory on its face, is the ban an essential feature of the State's three-tier system? If the ban is essential to North Carolina's three-tier system,

8

then it is permissible under § 2 of the Twenty-First Amendment, notwithstanding its discriminatory features.

### iv. North Carolina's Prohibition on Direct Shipping by Out-of-State Retailers

Plaintiffs challenge three North Carolina statutes that make it illegal for an out-of-state wine retailer to directly ship wine to North Carolina consumers. (Doc. No. 27-1, p. 9). The Court need not go into an extensive dormant Commerce Clause analysis as the challenged statues are discriminatory on their face. See N.C. GEN. STAT. § 18B-102.1; § 18B-109; § 18B-900(a)(2). Accordingly, the only question the Court need evaluate is the question of whether North Carolina's differential and discriminatory treatment of out-of-state wine retailers is essential to North Carolina's three-tier system.[4] The Court finds that it is, and the challenged statutes are accordingly protected by § 2 of the Twenty-First Amendment.

In reaching this conclusion, the Court finds a recent Sixth Circuit case instructive. In Lebamoff Enters. v. Whitmer, 956 F.3d 863 (2020), the court was presented with an identical issue: whether Michigan's ban on direct shipping by out-of-state alcohol retailers, while allowing in-state retailers to ship directly, violated the dormant Commerce Clause. Id. at 867. The Sixth Circuit upheld Michigan's laws under the Twenty-First Amendment because Michigan's differential treatment of out-of-state *retailers* was essential to the maintenance of Michigan's three-tier system. Id. As the court explained,

> [T]here is nothing unusual about the three-tier system, about prohibiting direct deliveries from out of state to avoid it, or about allowing in-state retailers to deliver alcohol within the State. Opening up the State to direct deliveries from out-of-state retailers *necessarily* means opening it up to alcohol that passes through out-of-state wholesalers or for that matter no wholesaler at all.

---

[4] Neither party focused on the three-tier system as their central argument. See (Doc. Nos. 27-1, 29). Defendant argues North Carolina has a legitimate interest in a "fair and orderly market for wine," and cites the State's three-tier system as "one such tool," to achieve that interest. (Doc. No. 29, p. 22). And Plaintiffs insist they are not challenging North Carolina's authority to implement a three-tier system. (Doc. No. 31, p. 11).

Id. at 872 (emphasis added). Because there was no way to afford the plaintiffs the relief sought without drastically undermining Michigan's three-tier system, which was unquestionably legitimate, the Sixth Circuit upheld the challenged laws.

The Court sees no meaningful difference between the Michigan laws at issue in Lebamoff and the North Carolina laws at issue here. Both sets of challenged laws targeted the commercial activity of liquor or wine *retailers*, which is the third-tier in a three-tier system. And as the Lebamoff court astutely explained, allowing out-of-state retailers to circumvent the three-tier system—while still requiring in-state retailers to participate in the system—would render the three-tier system meaningless.

To the extent Plaintiffs argue the Court should take direction from Beskind, in which the Fourth Circuit invalidated a North Carolina law which prohibited direct shipping by out-of-state wineries, Beskind, 325 F.3d at 517-518, the Court is unpersuaded. Wineries are *producers*; they are the first tier in a three-tier system and are meaningfully distinct from retailers, the third tier. See Tenn. Wine, 139 S. Ct. at 2470 ("§ 2 does not give the States the power to discriminate against out-of-state alcohol *products and producers*." (emphasis in original)); Sarasota Wine Mkt., 987 F.3d at 1176, 1184 (agreeing with the district court that there is a fundamental difference between producers and retailers). Allowing producers to circumvent the three-tier system does not undermine the system in the same way allowing retailers to circumvent the system would.

For example, if the Court were to invalidate the challenged laws here, the result would be a regulatory environment in which out-of-state wine retailers could circumvent North Carolina's three-tier system, while in-state wine retailers could not. Out-of-state wine retailers would be treated *more favorably* than in-state retailers, which is a result not mandated by the dormant Commerce Clause. Indeed, out-of-state retailers would be able to sell their wine to consumers at lower prices than in-state retailers, who are required to buy their supply from wholesalers at prices

set based on excise tax rates. See N.C. GEN. STAT. § 105-113.80. Put simply, North Carolina wine retailers would be at a competitive pricing disadvantage. And the only ways of remedying that disadvantage would be to either grant in-state retailers the ability to circumvent the three-tier system and thus virtually eliminate the system, or to prohibit out-of-state retailers from circumventing the system—which is exactly what the presently-challenged laws do now. See Bridenbaugh v. Freeman-Wilson, 227 F.3d 848, 854 (7th Cir. 2000) ("[S]tates discriminated against in-state sellers, because they could not effectively govern direct shipments from elsewhere.").

Given a choice between virtually eliminating North Carolina's three-tier system, which the Supreme Court and multiple Courts of Appeals have determined is unquestionably legitimate, and maintaining the status quo, the Court chooses the latter.

In so concluding, the Court does not summarily cast aside Plaintiffs' well-founded arguments that North Carolina's ban on direct-shipping does not have the *effect* of advancing the public health goals the laws purport to advance. The Supreme Court itself has held that it is the effect of a law that matters in a § 2 analysis, not the law's stated purpose. Tenn. Wine, 139 S. Ct. at 2474 ("Where the predominant *effect* of a law is protectionism, not the protection of public health or safety, it is not shielded by § 2." (emphasis added)). However, until such time when the citizens of North Carolina determine its three-tier system does not appropriately "address the public health and safety effects of alcohol" by making it harder and more expensive to sell alcohol in North Carolina, see id.; see also Lebamoff, 954 F.3d at 874 ("The purpose [and effect] of the [three-tier] system, for better or worse, is to make it harder to sell alcohol by requiring it to pass through regulated in-state wholesalers."), the Twenty-First Amendment protects North Carolina's three-tier system and its essential and necessary features. Defendant is accordingly entitled to judgment as a matter of law.

**b. Motion to Strike**

Defendant moves to strike two of Plaintiff's excerpt reports: the Wark Report and the Lassiter Report. (Doc. No. 36). Based on the foregoing discussion and conclusion regarding the cross-motions for summary judgment, Defendant's Motion to Strike, (Doc. No. 36), is DENIED AS MOOT.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Strike, (Doc. No. 35) is DENIED; Plaintiffs' Motion for Summary Judgment, (Doc. No. 27), is DENIED; and Defendant's Motion for Summary Judgment, (Doc. No. 28) is GRANTED. The Clerk of Court is respectfully DIRECTED to issue a separate judgment in accordance with the terms of this Order.

IT IS SO ORDERED.

Signed: July 9, 2021

Frank D. Whitney
United States District Judge